**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS WESTERN DIVISION**

| | | |
|---|---|---|
| Rodney W.<br><br>Plaintiff,<br><br>v.<br><br>Frank Bisignano,<br>Commissioner of Social Security,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 25-cv-50267<br><br>Magistrate Judge Margaret J. Schneider |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Rodney W., seeks review of the final decision of the Commissioner of the Social Security Administration denying him disability benefits. For the reasons set forth below, the Court affirms the Commissioner's decision.

**BACKGROUND**

**A. Procedural History**

On December 6, 2017, Rodney W. ("Plaintiff") filed a Title II application for disability and disability insurance benefits alleging disability beginning November 1, 2017. R. 2660. The Social Security Administration initially denied his claim on March 7, 2018, and upon reconsideration on June 14, 2018. *Id.* Thereafter, Plaintiff filed a written request for hearing, and a hearing was held on April 16, 2019. *Id*. Plaintiff, represented by counsel, appeared and testified at the hearing. An impartial vocational expert also appeared and testified. *Id*. Administrative Law Judge ("ALJ") Susan Zapf issued an unfavorable decision on June 17, 2019. The decision was appealed and the Appeals Council denied review on May 6, 2020. *Id*. The decision was then appealed to this Court which granted Plaintiff's motion for summary judgment and remanded the case for further proceedings on December 5, 2022. *See* 20 CV 50255.

On remand, a hearing was held on July 17, 2023. R. 2660. Plaintiff, again represented by counsel, appeared and testified. *Id*. An impartial medical expert and an impartial vocational expert also appeared and testified. *Id*. On October 4, 2023, ALJ Robert Schwartz issued an unfavorable decision. *Id*. The Appeals Council denied review. *Id*. An appeal was filed to this Court, and on October 18, 2024, the Court granted the Commissioner's agreed motion for reversal with remand. *See* 24 CV 50122. The Appeals Council then issued its remand order pursuant to this Court's order. R. 2661. A hearing was held before ALJ Schwartz on April 22, 2025. *Id*. Plaintiff, represented by counsel, appeared and testified. *Id*. Again an impartial medical expert and an impartial vocational expert appeared and testified. *Id*.

On May 16, 2025, ALJ Schwartz issued his written opinion denying Plaintiff's claims for disability insurance benefits for the period of November 1, 2017, to September 30, 2019. R. 2660-86. Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g); *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). Now before the Court are Plaintiff's motion for summary judgment [17] and the Commissioner's cross-motion for summary judgment and response to Plaintiff's motion for summary judgment [22]. Plaintiff has also filed a reply brief [23].

**The ALJ's Decision**

In his ruling, the ALJ followed the statutorily required five-step analysis to determine whether Plaintiff was disabled under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). At step one of the five-step analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity from his alleged onset date of November 1, 2017, through his date last insured of September 30, 2019. R. 2663. At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar, thoracis, and cervical degenerative disc disease status-post lumbar spine surgeries; shoulder tendinitis; carpal and cubital tunnel syndrome; and obesity. R. 2663-65. The ALJ found that these impairments significantly limited Plaintiff's ability to perform basic work activities. *Id*. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. § 404, Subpt. P, App. 1. R. 2665-66.

Before step four, the ALJ found that Plaintiff had a residual functional capacity ("RFC") to perform sedentary work, except that he should push or pull to use foot controls no more than frequently, and he should have an opportunity to use a cane while walking over uneven terrain or for prolonged distances (50 feet or more). Plaintiff should avoid climbing ladders, ropes, or scaffolds. He should climb ramps and/or stairs, balance, stoop, kneel, crouch, and/or crawl no more than occasionally. Plaintiff should reach overhead no more than occasionally, and he should reach in any other direction no more than frequently. Plaintiff should handle, finger, and feel no more than frequently, and he should avoid concentrated exposure to temperature extremes, vibration and hazards like unprotected heights and dangerous machinery. R. 2666-84.

At step four, the ALJ found that Plaintiff did not have past relevant work experience. R. 2684. Finally, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including telephone quotation clerk, addresser, and document preparer. R. 2684-86. Therefore, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any time from November 1, 2017, through September 30, 2019, the date last insured. R. 2686.

**STANDARD OF REVIEW**

The reviewing court evaluates the ALJ's determination to establish whether it is supported by "substantial evidence," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cain v. Bisignano*, No. 24-1590, 2025 WL 2202133, at *3 (7th Cir. Aug. 4, 2025) (quoting *Crowell v. Kijakazi*, 72 F.4th 810, 813 (7th Cir. 2023)). " Substantial

evidence is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 97, 103 (2019) (citations omitted). "Whatever the meaning of 'substantial' in other contexts," the Supreme Court has emphasized, "the threshold for such evidentiary sufficiency is not high." *Crowell*, 72 F.4th at 813 (quoting *Biestek*, 587 U.S. at 103) (citation modified). As such, the reviewing court takes a limited role and cannot displace the decision by reconsidering facts or evidence or by making independent credibility determinations, *id*. at 814 (citing *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)), and "confines its review to the reasons offered by the ALJ." *Green v. Astrue*, No. 11 CV 8907, 2013 WL 709642, at *7 (N.D. Ill. Feb. 27, 2013). As the Seventh Circuit has made clear, ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) (citations omitted). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054 (citation modified).

The court will only reverse the decision of the ALJ "if the record compels a contrary result." *Thorlton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025) (citation modified). The court is obligated to "review the entire record, but [the court does] not replace the ALJ's judgment with [its] own by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). The court's "review is limited also to the ALJ's rationales; [the court does] not uphold an ALJ's decision by giving it different ground to stand upon." *Id*. Additionally, an ALJ "need not specifically address every piece of evidence, but must provide a logical bridge between the evidence and his conclusions." *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023) (citation modified) (citations omitted); *see also Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).

## DISCUSSION

Plaintiff argues the ALJ erred at the step five determination by relying on disfavored jobs without providing reliable evidence that the jobs were performed in a significantly different manner than as defined by the Dictionary of Occupational Titles ("DOT"), or by finding that the jobs existed in significant numbers. Plaintiff also argues the ALJ's decision failed to provide a basis for discounting Plaintiff's subjective symptoms. As detailed below, the Court finds that the ALJ's vocational findings were supported by substantial evidence and that his subjective symptom analysis was not patently wrong.

### <u>Vocational Findings at Step Five</u>

Plaintiff contends that the ALJ erred at step five by relying on the VE's testimony that there existed in significant numbers, occupations in the national economy that Plaintiff could perform. The VE testified that considering an individual of Plaintiff's age, education, and RFC, there existed a significant number of sedentary and unskilled jobs in the national economy, including telephone quotation clerk (37,000 jobs), addresser (22,500 jobs), and document preparer (145,500 jobs; later amended by the VE at the hearing to 64,000 jobs) R. 2685. Plaintiff asserts that the ALJ erred in citing the positions of addresser and document preparer in his decision as these positions fail to comply with the heightened standard provided in Emergency Message 24027, which addresses

potentially obsolete occupations. Plaintiff also challenges the position of telephone information clerk, arguing the existence of this job as well as the number of positions available for this job, strains credibility. The Court finds that the ALJ's step five determination was supported by substantial evidence.

At step five of the sequential evaluation process, the burden shifts to the Commissioner to demonstrate that "there are significant numbers of jobs in the national economy for someone with the claimant's abilities and limitations." *Ruenger v. Kijakazi*, 23 F.4th 760, 761 (7th Cir. 2022) (per curiam) (citation omitted); *see* 20 C.F.R. § 404.1560(c)(2). At this step, ALJs often rely on VEs to estimate the number of jobs that exist in significant numbers in the national economy for an individual with the claimant's experience and limitations. *Ruenger*, 23 F.4th at 761; 20 C.F.R. § 416.966(e). "Before accepting a VE's job-number estimate, the ALJ, when confronted by a claimant's challenge, must require the VE to offer a reasoned and principled explanation." *Chavez v. Berryhill*, 895 F.3d 962, 970 (7th. Cir. 2018). Ultimately, "the substantial evidence standard requires the ALJ to ensure that the approximation is the product of a reliable method." *Id.* at 968 (citations omitted). Additionally, ALJs apply the guidance of SSR 24-3p: Use of Occupational Information and Vocational Specialist and Vocational Expert Evidence in Disability Determinations and Decisions. Under SSR 24-3p, ALJS recognize the Dictionary of Occupational Titles ("DOT") as a valid and reliable source of occupational information, but further acknowledge that the VE may use any reliable source of occupational information, such as the Standard Occupational Classification ("SOC") system, as well as their professional knowledge, training, and experience. "VEs…may use a combination of these sources when providing occupational evidence. Adjudicators must weigh the VE…evidence in the context of the overall record and determine whether it can support a conclusion at step four or five." SSA 24-3.

In response to courts questioning the continued widespread existence of certain occupations contained in the DOT, the Social Security Administration issued Emergency Message 24027 REV[1] ("EM-24027 REV"), which took effect on January 6, 2025. The emergency message sets forth heightened evidentiary and articulation requirements for thirteen listed occupations deemed potentially obsolete and directs that an ALJ may not cite any of the listed occupations without obtaining additional evidence from the VE that, as currently performed: (1) the occupation's "requirements are consistent with the individual's RFC," and (2) the occupation "exists in the national economy in numbers that alone, or in combination with work in other cited occupations, are significant." *Id.* Finally, the emergency message directs ALJs to include or summarize the VE's evidence that supports the conclusion. *Id.*

The parties do not dispute that the ALJ's findings as to the addresser and document preparer positions were subject to EM-24027 REV, as they are among the thirteen occupations listed in the emergency message, effective at the time of the hearing. However, Plaintiff contends that the ALJ based his decision on unreliable evidence from the VE, including the VE's testimony that the jobs of addresser and document preparer used updated technology and processes, and that the VE failed to demonstrate that the jobs existed in sufficient numbers. The Commissioner responds that the ALJ's decision met the requirements of EM-24027 REV by eliciting and summarizing testimony from the VE regarding the addresser and document preparer occupations, including accurate job

---

[1] Soc. Sec. Admin., EM-24027 REV - Guidance Regarding the Citation of Certain Occupations at Step Five of the Sequential Evaluation Process (Jan. 6, 2025), https://secure.ssa.gov/apps10/reference.nsf/links/01062025092030AM.

numbers, and that Plaintiff forfeited any challenges to the VE's testimony by failing to object during the administrative hearing.

"[L]ittle caselaw exists analyzing the quantum of 'additional evidence' an ALJ must offer to rely on a listed job at Step Five," however, district courts within and beyond this circuit have found that an ALJ may properly rely on a VE's testimony, consistent with EM-24027, so long as the VE provides the additional testimony discussed above. *See Boscaljon v. Comm'r of Soc. Sec.*, No. 3:25-CV-01541-JRK, 2026 WL 1842604, at *5 (N.D. Ohio June 26, 2026) (collecting cases); *see, e.g., Jared T. v. Bisignano*, No. 25-CV-1343, 2026 WL 2099142, at *7-8 (E.D. Wis. July 21, 2026); *Elizabeth M. v. Bisignano*, No. 25-cv-2550 (DJF), 2026 WL 686783, at *4-5 (D. Minn. Mar. 11, 2026); *Moria R. v. Comm'r of Soc. Sec.*, No. 2:24-cv-00227-Z-BT, 2025 WL 3190852, at *7 (N.D. Tex. Sep. 5, 2025); *Amy Marie H. v. Comm'r of Soc. Sec.*, No. 1:25-cv-00082, 2026 WL 2665448, at *14-15 (W.D.N.Y. Sept. 10, 2026). Courts have also found sufficient "additional evidence" where a VE relies on experience to testify on the occupation as currently performed. *See McGinty v. Bisignano*, No. 1:25-CV-1965, 2026 WL 1413553, at *8 (M.D. Pa. May 20, 2026) (citations omitted); *Rose v. Bisignano*, No. 7:24-cv-1141-KS, 2026 WL 540781, at *3 (E.D.N.C. Feb. 26, 2026); *Tester-Kopec v. Comm'r of Soc. Sec.*, No. 1:25-cv-00001, 2025 WL 3628110, at *9-10 (N.D. Ohio Dec. 15, 2025).

The Court finds that the ALJ satisfied the heightened standard set forth in EM-24027 REV. First, during the hearing, in response to questioning by the ALJ noting that the DOT has not been updated in many years and that there have been "significant advances in technology and changes in tools since it was updated," the VE testified that, based on his experience in the labor market, the jobs of addresser and document preparer are still performed at the sedentary and unskilled level, but the modern tasks as to these jobs is "sufficiently more streamlined and more efficiently performed, with updated processes and procedures." R. 2724. As an example, the VE explained that as to the addresser job, the updated version involves preprinted address labels or stickers that are placed onto envelopes. R. 2724-25. Regarding the document preparer position, the VE testified to one and two-step tasks involving scanning documents or putting them in three-ring binders. R. 2729. He further testified that under certain conditions, the job would involve the use of a computer or "coiling machine," but that it would just be following steps – the computer interaction would not involve entering data or information.[2] R. 2730. Plaintiff argues that this testimony was conflicting, stating that the VE testified that the jobs used updating technology, such as computers, but then later testified that the jobs did not require the use of a computer. However, as noted above, the ALJ's decision includes the VE testimony that these occupations may include methods that have been replaced by more modern processes. At the hearing, Plaintiff's counsel's inquired: "So they're not utilizing the computer at all?" To that, the VE responded: "In certain cases, they will be but they're – what – they're not entering any information into the computer. They're following steps that are presented to them." *Id*. A close review of the record in combination with a reading of the ALJ's decision, reveals that the VE's testimony was not in conflict, and the ALJ's analysis is well-supported.

[2] At the hearing, counsel for Plaintiff did not ask the VE to define "coiling machine." In his reply brief, Plaintiff provides the Court with a definition of "coiling machine" from a website, as well as cites to the DOT [23], p. 5. The Court is neither persuaded nor informed based on this definition as it adds no context to the ALJ's unchallenged use of the term.

Also thoroughly addressed in the ALJ's decision is the VE's testimony as to identification of sources the VE relied upon in support of his testimony. For example, the ALJ set out that the VE testified that he used Bureau of Labor Statistics ("BLS") special studies and quarterly reports from US Publishing, noting that the VE used these data sources "and how they are defined in the DOT and SOC with how employment opportunities or specific job titles are performed in today's economy." R. 2685. This included work site analysis and informational interviews with employers. *Id*. Further, the ALJ's decision points out that the VE used Job Browser Pro and information from BLJ reports to craft his job numbers, stating: "Any differences in the numbers are accounted for by cross-walking the information of the past relevant work or employment opportunities resulting within the primers of the hypothetical given to [the VE]." *Id*. The Court finds that the ALJ sufficiently addressed the data sources and that the VE's testimony was reliable and consistent with the guidance of SSR 24-4p.

Plaintiff next argues that the VE's reliance on the positions of addresser and document preparer failed to meet the second prong of the additional proof required by EM-24027 REV. Specifically, Plaintiff argues that the VE's testimony regarding the job numbers was "ambiguous at best and self-conflicting at worst." [17], p. 10. However, the ALJ's decision addresses any suggested conflict in the job numbers. In his decision, the ALJ specifically noted that at the hearing, he questioned the VE about his seemingly high number of 22,500 addresser job (given that at the prior hearing, the VE offered a lower number). The VE testified that the number came from the updated Job Browser Pro software as well as his experience in the labor market.[3] Likewise, the ALJ questioned the VE's job numbers (145,500 sedentary unskilled jobs) for the document preparer position, noting that the VE's number was a very high estimate compared to what the ALJ had heard testified to in other cases. The ALJ's decision noted that the VE testified that the higher number came from the broader SOC category, but then agreed that there were at least 64,000 full-time document preparer jobs. The ALJ accepted this testimony. The ALJ found, and this Court agrees, that the VE's testimony was acceptable and reliable and consistent with SSR 24-3p ("We do not dictate any specific approach to estimating job numbers, and the numbers provided are only general estimates. VEs may provide evidence based on their professional experience and any reliable source of occupational information that is commonly used in the vocational profession and relevant under our rules."); *see also Biestek*, 587 U.S. at 1152-53 (quoting SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000) (rescinded and replaced with SSR 24-3p)) ("[E]xperts may invoke not only publicly available sources but also 'information obtained directly from employers' and data otherwise developed from their own 'experience in job placement or career counseling.'") (citations and quotations omitted)). Accordingly, the Court finds that substantial evidence supported the ALJ's finding that the addresser position and document preparer position existed in significant numbers in the national economy, and further that all the requirements of EM-24027 REV have been met.

---

[3] Plaintiff also makes a brief argument that the position of addresser should have been disregarded on its face due to the fact that the VE's finding of 22,500 sedentary unskilled jobs nationally fails to account for this number of jobs in the region in which Plaintiff lives or several regions in the country, in violation of 20 C.F.R. § 404.1566, because the VE cited to one job in Columbus, OH (Highlights for Children). The Court is unpersuaded by this argument. At the hearing, the VE used Highlights for Children as an example of an addresser job. The VE was not relying on this employer as the sole employer of addresser positions and this testimony was not in violation of 20 C.F.R. § 404.1566.

Finally, Plaintiff argues that the "existence of [telephone information clerk job], and certainly 37,200 positions nationally, strains credibility." [17], p. 12. However, Plaintiff fails to provide any substantive support for this position. Plaintiff states that the VE failed to give a reliable basis for this testimony and further takes the position that the "sole" job of telephone quotation clerk "is to relay stock prices, a function provided by any internet search or web browser." Plaintiff neither cites to the record nor any outside source to support this argument. Despite Plaintiff's assessment that this job is "outdated," the Court notes that telephone information clerk is not one of the 13 occupations listed in EM-24027 REV; therefore, no additional evidence at step 5 of the evaluation process was required. At the hearing, the VE testified to 37,200 sedentary unskilled telephone information clerks in the national economy. Counsel for Plaintiff did not ask the VE any questions about this testimony and therefore, the VE's testimony went unchallenged. "When a claimant fails to object to a vocational expert's qualifications or testimony during the hearing, the claimant forfeits those arguments." *Cain v. Bisignano*, 148 F.4th 490, 499-500 (7th Cir. 2025) (citing *Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016)). The Court finds that Plaintiff has forfeited this argument.

**Evaluation of Subjective Symptoms**

Plaintiff next contends that the ALJ failed to provide a basis for discounting Plaintiff's statements concerning his subjective symptoms and therefore rendered an RFC that did not account for all of Plaintiff's limitations. The Court finds that the ALJ reasonably evaluated Plaintiff's subjective symptoms.

ALJs are required to evaluate a claimant's symptoms through a two-step process. SSR 16-3p. First, the ALJ must "determine whether the individual has a medically determinable impairment . . . that could reasonably be expected to produce the individual's alleged symptoms." *Id*. Next, the ALJ must evaluate the intensity and persistence of an individual's symptoms to "determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." *Id*. When assessing a claimant's subjective symptom allegations, an ALJ considers several factors, including the objective medical evidence, opinion evidence, daily activities, medication, and course of treatment. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5–8. "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022). An ALJ's assessment is patently wrong if the decision lacks any explanation or support. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). Not all of the ALJ's reasons must be valid in a subjective symptom analysis, "as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (unpublished) (emphasis in original).

Here, Plaintiff notes that in formulating the RFC, the ALJ disagreed with the medical expert's opinion that Plaintiff could perform work at the light level, and instead, limited Plaintiff to work at the sedentary level. However, Plaintiff goes on the argue that the ALJ "failed to explain why Plaintiff was not as limited as alleged and demonstrated by the record." [17], pg. 13. Plaintiff cites to portions of the record that show that he was not able to sit or stand for long periods of time due to back pressure; he experienced side effects of pain medication; during the day he required periods of time to recline or lie down; he could only sit for 20-30 minutes at a time and could only stand for 20 minutes; he could lift no more than 5-10 pounds; he could not stand without the use

of a cane; and had significant problems performing certain activities. [17], pg. 14. Plaintiff argues the ALJ failed to analyze this evidence or testimony and erred by merely summarizing the evidence and testimony. To be consistent with the regulations, an ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSA 16-3p.

The ALJ's assessment was adequately supported with evidence and explanation. The ALJ exhaustively reviewed Plaintiff's disability report form, impairment questionnaire, and activities of daily living ("ADL") questionnaire. In this review, the ALJ acknowledged Plaintiff's complaints of inability to perform tasks around the house due to back and left leg pain. The decision further sets out Plaintiff's issues regarding carrying groceries, laundry, and trash, reaching overhead, getting in and out of a vehicle, sitting in a car, getting up from a chair or bed, and the accompanying pain and strain of accomplishing these tasks. R. 2667. Regarding his ADL questionnaire responses, Plaintiff noted difficulty sleeping, bathing, dressing, shaving, preparing meals and performing household chores. *Id*. The ALJ's decision also documents Plaintiff's limitations regarding hobbies and social activities due to his pain, as well as sets out details of Plaintiff's hearing testimony. R. 2667-68. Here, Plaintiff testified to difficult standing or sitting for prolonged periods of time, back pressure, and medication side effects. This testimony also included Plaintiff's reaction to his spinal cord stimulator and his evaluations at Mayo Clinic. R. 2668. The ALJ noted that Plaintiff testified that he needed a cane for support to stand and that he did not think he could perform a sit-down job, stating that he spent most of his time in a recliner. R. 2668-69.

In addressing Plaintiff's statements, the ALJ discussed medical records that indicated the contrary. For example, the ALJ cited appointment notes demonstrating that Plaintiff experienced significant improvement with the dorsal column stimulator and generally reported a low level of pain. R. 2682. Additionally, the medical opinions noted that Plaintiff's degenerative changes in his cervical, thoracic, and lumbar spine, were not significant pain or symptom producers. R. 2683. Moreover, the ALJ decision, in its comprehensive, 8-page review of Plaintiff's medical history through the date last insured, sets out Plaintiff's positive findings as well as noting months of pain relief and physical functioning (R. 2670), CT scans of the spine revealing no acute abnormalities, no significant compromise of the spinal canal, and no instrumentation failure (*Id*.), examinations indicating symmetric strength in all tested areas (R. 2671), normal gait, motor strength, muscle tone, and sensation throughout (*Id*.), 75% improvement in pain with good stimulation following the spinal cord stimulator implant (R. 2672), no swelling, discoloration, or deformity of the shoulder upon examination (R. 2673), full range of motion in the shoulders with minimal pain (*Id*.), full and painless cervical spine range of motion (*Id*.), and full range of motion of the neck with no tenderness to palpitation (*Id*.). Following this exhaustive review of Plaintiff's medical records, the ALJ provided a detailed account of Plaintiff's orthopedic surgeon's testimony at two hearings, incorporating a thorough review of Plaintiff's medical records, examinations, and imaging tests. The ALJ's decision also incorporates his findings as to Plaintiff's RFC, including the additional limitations the ALJ provided. The ALJ's decision provides a balance between the positive findings in the record and areas where Plaintiff's claims are unsupported.

Accordingly, the Court finds that the ALJ sufficiently followed the guidelines in SSR 16-

3p when evaluating Plaintiff's subjective symptoms as a whole by adhering to the two-step process and considering various types of evidence as required. The ALJ appropriately examined Plaintiff's stated symptoms and their consistency with the record. The ALJ credited Plaintiff's symptoms to the extent they were supported by the record, which resulted in an RFC that limited Plaintiff to sedentary work. R. 2666. Ultimately, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms did not warrant greater limitations as Plaintiff could still complete basic work-related activities. R. 2669. To the extent Plaintiff maintains that the record supported different findings, the Court notes it applies "'a deferential standard to the ALJ's decision. [The court] will reverse an ALJ's decision denying benefits only if it is not supported by substantial evidence or if it is the result of an error of law.'" *Liapis v. Bisignano*, 180 F.4th 946, 950 (7th Cir. 2026) (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). Additionally, "[a]lthough we will not reweigh the evidence or substitute our own judgment for that of the ALJ, we will examine the ALJ's decision to determine whether it reflects a logical bridge from the evidence to the conclusions[.]" *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014) (citations omitted). Additionally, the court "will overturn an ALJ's decision to discredit a claimant's alleged symptoms only if the decision is 'patently wrong,' meaning it lacks explanation or support. A credibility determination lacks support when it relies on inferences that are not logically based on specific findings and evidence." *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) (citations omitted). Here, the Court finds that the ALJ's path from the evidence to his conclusions is more than sufficient. Therefore, the Court finds the ALJ's subjective evaluation fully explained, supported by substantial evidence, and not patently wrong.

**CONCLUSION**

For the foregoing reasons, the Court affirms the Commissioner's decision.

Date: September 29, 2026

ENTER:

Margaret J. Schneider
United States Magistrate Judge